137 P.3d 318 (2006)
In the Matter of the Petition for ADOPTION OF C.A., A Child,
N.F. and A.F., Petitioners
v.
R.A., Jr. and T.A., Respondents.
No. 05SC526.
Supreme Court of Colorado, En Banc.
June 26, 2006.
*319 Law Firm of Kenton D. Kinnaird & Associates, P.C., Kenton D. Kinnaird, Sean Cloyes, Colorado Springs, Colorado, Attorneys for Petitioners.
Beltz, Edwards, Sabo & West, LLP, W. Thomas Beltz, Daniel A. West, Colorado Springs, Colorado, Attorneys for Respondents.
Justice HOBBS delivered the Opinion of the Court.
We granted certiorari to review the court of appeals' judgment in In re Petition of R.A., 121 P.3d 295 (Colo.App.2005), construing Colorado's grandparent visitation statute, § 19-1-117, C.R.S. (2005).[1] This case, involving the child's paternal grandparents and the adoptive parents, who are the child's maternal uncle and aunt, concerns how Colorado implements the U.S. Supreme Court's "special weight" and "special factors" requirements announced in Troxel v. Granville, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) (plurality opinion). The court of appeals concluded that a court may not order a grandparent visitation schedule over the wishes of the parents unless the grandparents prove the parents unfit to make the visitation determination or the parents' visitation decision would substantially endanger the emotional health of the child. In re R.A., 121 P.3d at 300.
In Troxel, the Supreme Court did not require the standard of harm or potential harm to the child that the court of appeals adopted in this case. 530 U.S. at 73, 120 S.Ct. 2054. We conclude that the Supreme Court left to each state the responsibility for enunciating how its statutes and court decisions give "special weight" to parental determinations in the context of grandparent visitation orders.
To accommodate both the General Assembly's "best interests of the child" intent and the "special weight" and "special factors" requirements of Troxel, we hold that the appropriate standard for issuance of an order for grandparent visitation under section 19-1-117 requires: (1) a presumption in favor of the parental visitation determination; (2) to rebut this presumption, a showing by grandparents through clear and convincing evidence that the parental visitation determination is not in the child's best interests; and (3) placement of the ultimate burden on grandparents to establish by clear and convincing evidence that the visitation schedule they seek is in the best interests of the child. The court must apply this standard in grandparent visitation cases and, if it orders grandparent visitation, it must make findings of fact and conclusions of law identifying those "special factors" on which it relies.
Accordingly, we reverse the judgment of the court of appeals and return this case to it with directions that it be remanded to the district court for further proceedings consistent with this decision.

I.
C.A. was born to C.F. and D.F., the biological mother and father respectively, in May of 1992. D.F. died in May 1994, when C.A. was approximately two years old. C.F. was later diagnosed with cancer. In 1996, C.F. moved with C.A. to Colorado to live with her sister and brother-in-law, the child's uncle and aunt on the maternal side (hereinafter the "Parents" in light of their adoption of C.A.). As her illness advanced, C.F. completed a will in which she named the Parents as C.A.'s guardians. C.F. died in May 1997, *320 when C.A. was five years old. The court's order of July 3, 1997, recognized the Parents' guardianship of C.A. The Grandparents did not contest the guardianship.
During the Parents' guardianship, the parties disagreed regarding the Grandparents' visitation and unsuccessfully attempted mediation. Although the parties eventually entered into a stipulation, disagreements arose over the meaning of terms in the stipulation. Despite the disagreements, the Grandparents visited periodically with C.A. and maintained phone contact from their home in Nevada.
In January 1999, the Parents filed a petition to adopt C.A., who was then six years old. In March 1999, the Grandparents conditionally objected to the adoption and requested visitation under Colorado's grandparent visitation statute, § 19-1-117, C.R.S. (2005). The Grandparents asserted it would not be in C.A.'s best interests to be adopted unless the court ensured visitation with them.
The magistrate granted the adoption in August 2000, when C.A. was eight years old. In a second order in October 2000, the magistrate ordered visitation with the Grandparents. In his October order, the magistrate recited findings in granting the adoption that the Parents were "of excellent moral character;" were fit to adopt the child and had the ability to support, educate, and provide a good home for him; and it would be in the child's best interests for them to adopt him. Nonetheless, the magistrate concluded that the Parents "have not fully recognized the child's need for separate attention related to his parental heritage," and that C.A.'s "best interests will be served by the Court ordering a specific visitation schedule" in order to "avoid conflicts between the parties in the future."[2]
The magistrate's written ruling sets forth the court-ordered visitation schedule at issue before us (the magistrate's order refers to the Parents as "Petitioners" and the Grandparents as "Interested Parties"):
A. For the year 2000, this shall include five (5) days of visitation where the Interested Parties choose, either during the Thanksgiving holiday or during the Christmas holiday (beginning no earlier than December 27th). Interested Parties shall advise Petitioners of their intent to exercise the said visitation on or before September 3, 2000.
B. Beginning for the calendar year of 2001 and for each successive year, Interested parties shall have the following visitation rights:
(1) Ten (10) consecutive days during the summer where Interested Parties choose.
(2) Five (5) consecutive days during the Thanksgiving or Christmas holiday (beginning on or after December 27, 2001) where Interested Parties choose.
C. The visits to the Interested Parties' residence beginning in 2001 shall only occur if they provide the Petitioners with notice of their intention to exercise said visitation on or before March 1st of each year. Interested Parties shall be required to arrange and pay for all transportation associated with the visits including providing a chaperone for the child until all four (4) parties to this action agree that the child is able to travel alone. Each day of extended visitation shall be twenty-four hours (24) so that, for example, when ten (10) days of visitation are exercised, Interested Parties shall be entitled to two hundred and forty hours (240) of continuance [sic] visitation. The time spent traveling to and from the Interested Parties' residence shall be included within (and shall not be in addition to) the visitation time.
*321 The magistrate's order also provided that the Grandparents were entitled to exercise visitation rights in the Colorado Springs area for up to two weekends per year consisting of seventy-two consecutive hours each upon reasonable notice being given to the Parents. The magistrate's order retained jurisdiction to modify visitation "if such modifications serve the child's best interest."
The Parents requested that the issue concerning the constitutionality of the grandparent visitation statute be heard by a district court judge because the magistrate ruled that he did not have authority to declare a statute unconstitutional. The district court denied the Parents' declaratory judgment request. The district court affirmed the magistrate's grandparent visitation order and added a provision that the Parents make the child available for telephone contact with the Grandparents forty-five minutes prior to his bedtime each Sunday night.
On appeal, the court of appeals concluded that the grandparent visitation statute was not facially unconstitutional. In re Petition of R.A., 66 P.3d 146, 148 (Colo.App.2002) (hereinafter "R.A. I"). Regarding the Parents' unconstitutional as applied argument, the court of appeals ordered further proceedings for the district court to determine whether the magistrate gave "special significance" to the Parents' wishes, as required by In re Custody of C.M., 74 P.3d 342 (Colo. App.2002). R.A. I, 66 P.3d at 151.
On remand, the district court concluded that the record did not reflect whether the magistrate had given special significance to the Parents' wishes. It therefore vacated the order granting visitation, granted interim visitation, and referred the matter to the magistrate to clarify whether he had given special significance to the Parents' determinations.
Following a hearing, the magistrate issued a written order reaffirming and reentering the visitation schedule he had originally ordered. This order does not contain findings based on the evidence that enunciate those "special factors" the Troxel decision directs the court to articulate in entering a grandparent visitation order. In material part, the magistrate's order reads as follows:
5. The Magistrate reviewed the transcript from the contested August 3, 2000 hearing and conducted a supplemental evidentiary hearing on August 14, 2003 in order to obtain the input of the [adoptive parents] prior to entering this Order. At said hearing, the child's mother testified that the court ordered visitation placed stress on the family and that the parents had no intention of denying visitation to the grandparents, but that the parents should be trusted to do what was in the child's best interests instead of court ordered to do so. The father testified that the grandparents had not properly acknowledged the relationship that the child has to his legal parents and that this had contributed to the friction between the parties.
6. Special significance was previously given to the wishes of the Petitioners and that it is being given to them at this time as well. The tension and friction that exists between the parties requires that the prior court Order be enforced. The court is not confident that the grandparent visitation will be allowed, or if allowed that it will be limited unless it is enforceable by court Order. Such visitation is in the best interest of the child.
On review, the district court concluded that the magistrate's findings were not clearly erroneous and upheld it.
On appeal, the court of appeals vacated the grandparent visitation order. In re Petition of R.A., 121 P.3d 295 (Colo.App.2005) (hereinafter "R.A. II"). The court of appeals concluded that the "special weight" courts must give to parental determinations under Troxel requires a grandparent requesting visitation over the wishes of legal parents to prove "that a fit parent's exercise of parental responsibilities poses actual or threatened emotional harm to the child," and that such harm must be "substantial." Id. at 299.
Addressing the magistrate's order, the court of appeals concluded that the magistrate had not deferred sufficiently to the Parents' decision in absence of a finding that the Parents were unfit or that the Parents' decision would "substantially endanger the *322 emotional health of the child." Id. at 300. Having concluded that the magistrate erred in failing to give "special weight" to the Parents' wishes, the court of appeals vacated the magistrate's decision. Id. at 300, 301.
We granted the Grandparents' certiorari petition in order to determine the applicable Colorado standard for grandparent visitation decisions to implement the intent of the General Assembly consistent with the due process "special weight" and "special factors" requirements of Troxel.

II.
To accommodate both the General Assembly's "best interests of the child" intent and the "special weight" and "special factors" requirements of Troxel, we hold that the appropriate standard for issuance of an order for grandparent visitation under section 19-1-117 requires: (1) a presumption in favor of the parental visitation determination; (2) to rebut this parental presumption, a showing by the grandparents through clear and convincing evidence that the parental visitation determination is not in the child's best interests; and (3) placement of the ultimate burden on the grandparents to establish by clear and convincing evidence that the visitation schedule they seek is in the best interests of the child. The court must apply this standard in grandparent visitation cases, and, if it orders grandparent visitation, it must make findings of fact and conclusions of law identifying those "special factors" on which it relies.

A.

Colorado's Grandparent Visitation Statute.
Colorado adopted its grandparent visitation statute in 1980. See Act of Apr. 10, 1980, ch. 91, 1980 Colo. Sess. Laws 541. The statute provides for grandparent visitation orders when there is a child custody case or a case concerning the allocation of parental responsibilities relating to the child. This includes situations in which a parent who is the child of the petitioning grandparent has died.
(1) Any grandparent of a child may, in the manner set forth in this section, seek a court order granting the grandparent reasonable grandchild visitation rights when there is or has been a child custody case or a case concerning the allocation of parental responsibilities relating to that child. Because cases arise that do not directly deal with child custody or the allocation of parental responsibilities but nonetheless have an impact on the custody of or parental responsibilities with respect to a child, for the purposes of this section, a "case concerning the allocation of parental responsibilities with respect to a child" includes any of the following, whether or not child custody was or parental responsibilities were specifically an issue:

(a) That the marriage of the child's parents has been declared invalid or has been dissolved by a court or that a court has entered a decree of legal separation with regard to such marriage;
(b) That legal custody of or parental responsibilities with respect to the child have been given or allocated to a party other than the child's parent or that the child has been placed outside of and does not reside in the home of the child's parent, excluding any child who has been placed for adoption or whose adoption has been legally finalized; or
(c) That the child's parent, who is the child of the grandparent, has died.

(2) . . . . If neither party requests a hearing, the court shall enter an order granting grandchild visitation rights to the petitioning grandparent only upon a finding that the visitation is in the best interests of the child. A hearing shall be held if either party so requests or if it appears to the court that it is in the best interests of the child that a hearing be held. At the hearing, parties submitting affidavits shall be allowed an opportunity to be heard. If, at the conclusion of the hearing, the court finds it is in the best interests of the child to grant grandchild visitation rights to the petitioning grandparent, the court shall enter an order granting such rights.

§ 19-1-117, C.R.S. (2005) (emphasis added).
In adopting the grandparent visitation statute, the General Assembly recognized *323 that grandparents often undertake parental-type roles in the family when the parental relationship is disrupted or impaired. In Troxel, the Supreme Court noted this same societal phenomenon: "The nationwide enactment of nonparental visitation statutes is assuredly due, in some part, to the States' recognition of ... changing realities of the American family." Troxel, 530 U.S. at 64, 120 S.Ct. 2054.
In 2002, four percent of children lived in households with neither parent present, and of those children, almost half were living in their grandparents' household. Jason Fields, U.S. Department of Commerce, Census Bureau, Children's Living Arrangements and Characteristics: March 2002, at 3 (June 2003). Also as of 2002, "5.6 million children were living in households with a grandparent present (8 percent of all children)." Id. at 6.
Colorado is a "best interests of the child" state. See L.A.G. v. People in re A.A.G., 912 P.2d 1385, 1391 (Colo.1996) (noting that broad purposes of Children's Code emphasizes "the paramount importance of providing remedies that will further the best interests of the child"). In its dissolution of marriage act, the General Assembly enumerated in section 14-10-124(1.5)(a), C.R.S. (2005), a number of relevant factors that a court must consider in determining the best interests of the child for purposes of parenting time. In connection with marriage dissolution, the court is assigned the role of finding what parenting time is in the child's best interests after taking into account the statutory factors and any others applicable given the circumstances of the particular case. It can deny parenting time to a particular parent if parenting time by that party would endanger the child's physical health or significantly impair the child's emotional development. The statutory factors enumerated for parenting time orders include:
(I) The wishes of the child's parents as to parenting time;
(II) The wishes of the child if he or she is sufficiently mature to express reasoned and independent preferences as to the parenting time schedule;
(III) The interaction and interrelationship of the child with his or her parents, his or her siblings, and any other person who may significantly affect the child's best interests;
(IV) The child's adjustment to his or her home, school, and community;
(V) The mental and physical health of all individuals involved, except that a disability alone shall not be a basis to deny or restrict parenting time;
(VI) The ability of the parties to encourage the sharing of love, affection, and contact between the child and the other party;
(VII) Whether the past pattern of involvement of the parties with the child reflects a system of values, time commitment, and mutual support;
(VIII) The physical proximity of the parties to each other as this relates to the practical considerations of parenting time;
(IX) Whether one of the parties has been a perpetrator of child abuse or neglect under section 18-6-401, C.R.S., or under the law of any state, which factor shall be supported by credible evidence;
(X) Whether one of the parties has been a perpetrator of spouse abuse as defined in subsection (4) of this section, which factor shall be supported by credible evidence;
(XI) The ability of each party to place the needs of the child ahead of his or her own needs.
§ 14-10-124(1.5)(a)(I)-(XI); see L.A.G., 912 P.2d at 1388-89. Upon the motion of either parent or its own motion, the court must then allocate the decision-making responsibilities between the parties based on the best interests of the child. § 14-10-124(1.5)(b).
The grandparent visitation statute allows a grandparent to seek "reasonable grandchild visitation rights" when there is a child custody case or a case concerning the allocation of parental responsibilities. § 19-1-117(1). It prevents the court from entering a grandparent visitation order unless the visitation is in the best interests of the child. § 19-1-117(2). And it prevents grandparents from seeking an order granting grandchild visitation rights more than once every two years absent a showing of good cause. § 19-1-117(3).
*324 The court may terminate or modify grandchild visitation rights whenever such order would serve the best interests of the child, § 19-1-117(4), and any order granting or denying parenting time rights to the parent of a child shall not affect visitation rights granted to a grandparent, § 19-1-117(5). The statute also addresses disputes concerning grandparent visitation. § 19-1-117.5. The court's order imposing additional terms and conditions or modifying the previous order must address the "best interests of the child." § 19-1-117(4).
Although the grandparent visitation statute does not specifically enumerate the best interests of the child factors the court must take into account, many if not all of the factors contained in section 14-10-124(1.5)(a)(I)-(XI), C.R.S. (2005), may also be relevant for the court's consideration when considering a grandparent visitation petition. See L.A.G., 912 P.2d at 1391 (stating that broad purposes of the children's code emphasize the paramount importance of providing remedies that will further the best interests of the child).
However, in light of the Supreme Court's Troxel decision, due process imposes a "special weight" burden on the grandparents to overcome parental wishes when the court has before it a grandparent visitation petition.

B.

Due Process "Special Weight" and "Special Factors" Requirements
In Troxel v. Granville, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) (plurality opinion), the Supreme Court reviewed Washington's very broad third-party visitation statute. In regard to grandparent visitation and a parent's fundamental right to the care, custody, and control of his or her children, the Court ruled that due process requires a court to give "special weight" to the parents' determination: "if a fit parent's decision of the kind at issue here becomes subject to judicial review, the court must accord at least some special weight to the parent's own determination." 530 U.S. at 70, 120 S.Ct. 2054 (plurality opinion).
The trial court had made an independent determination as to what was in the child's best interest. The case reached the Washington Supreme Court, which consolidated the case with two other cases and concluded that the state's visitation statute unconstitutionally infringed on the fundamental rights of parents to rear their children.
The grandparents appealed to the U.S. Supreme Court. The Court affirmed the judgment of the Washington Supreme Court and held that the visitation order, as applied, unconstitutionally infringed on the mother's parenting rights. Troxel, 530 U.S. at 67, 120 S.Ct. 2054 (plurality opinion).
The Court's plurality opinion authored by Justice O'Connor noted several features of the Washington statute and the trial court's order as impacting its conclusion. First, the Court described the statute as "breathtakingly broad" because it allowed any person to petition for visitation at any time. Id. Second, the statute and the trial court's interpretation of it accorded no deference to a "parent's decision that visitation would not be in the child's best interests." Id. Thus, the judge could solely determine the best interests of the child. Id. Third, the trial court had not based the visitation order "on any special factors that might justify the State's interference with [the mother's] fundamental right to make decisions concerning the rearing of her two daughters." Id. at 68, 120 S.Ct. 2054.
The Court then turned its attention to the Due Process Clause of the United States Constitution. Id. Fit parents, the Court said, are presumed to act in the best interests of their children, id. (plurality opinion); see id. at 86, 120 S.Ct. 2054 (Stevens, J., dissenting) (agreeing with this portion of the plurality opinion), and the trial court had not found the mother to be an unfit parent. "Accordingly, so long as a parent adequately cares for his or her children (i.e., is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children." Id. at 68-69, 120 S.Ct. 2054. The Court faulted the trial *325 court for not only failing to give special weight to the mother's decision, but for placing the burden on the mother to show that visitation would not be in her child's best interests.
The Court then announced a due process "special weight" requirement. "[I]f a fit parent's decision of the kind at issue here becomes subject to judicial review, the court must accord at least some special weight to the parent's own determination." Id. at 70, 120 S.Ct. 2054 (plurality opinion). The Court restricted its decision to an "as applied" consideration and declined to address "whether the Due Process Clause requires all nonparental visitation statutes to include a showing of harm or potential harm to the child as a condition precedent to granting visitation."[3]Id. at 73, 120 S.Ct. 2054.
How Colorado courts implement the Troxel due process "special weight" and "special factors" requirements in considering and issuing orders under Colorado's grandparent visitation statute remained undefined until the court of appeals issued the decision we review in this case.
In its decision, the court of appeals reviewed the decisions of other states that have applied the "special weight" requirement and identified two prevailing approaches. R.A. II, 121 P.3d at 298. The first approach urged by the Grandparents"simply alters the weighing process by which trial courts balance multiple factors related to a `best interests of the child' analysis." Id. The second approachurged by the Parents "accord[s] extreme deference to parental wishes," and overrides parental wishes only if the parent is unfit to make the decision or when denying visitation would harm or substantially harm the child's emotional health. Id.
Citing the Oklahoma case of In re Herbst, 1998 OK 100, 971 P.2d 395, 399 (1998), the court of appeals concluded that, in the case of fit parents and absent a showing of harm or the threat thereof, it is not for the State to choose which associations a family must maintain and which the family is permitted to abandon. Id. at 299. Nonetheless, the court of appeals acknowledged a difference in type of harm experienced between children separated from grandparents who play only a secondary or companionate role in their lives, in contrast to those children who are separated from grandparents who play a primary or quasi-parental role in their lives. Id.
Having chosen the actual or threatened emotional harm to the child standard, the court of appeals then found in this case that "no evidence was presented indicating that the child would experience significant or substantial emotional harm in the absence of court ordered visitation." Id. at 300. Accordingly, it vacated the magistrate's grandparent visitation order. Id. at 301.
We disagree with the court of appeals on both points upon which it relied in vacating the magistrate's order for grandparent visitation. First, Troxel did not require a standard of significant or substantial emotional harm to the child; rather, Troxel requires that a court (1) give "special weight" to the parental determination and (2) identify those "special factors" upon which its grandparent visitation order is based. 530 U.S. at 70, 120 S.Ct. 2054. Second, in dismissing the Grandparents' petition, the court of appeals ignored evidence in this record that the child and the Grandparents had established a bond of affection and care forged in the first four years of the child's life and reinforced when the child's father died.
We now turn to the appropriate Colorado standard for implementing Troxel and the grandparent visitation statute.

C.

Accommodating the General Assembly's Intent and Troxel

In applying the Supreme Court's Troxel opinion, state appellate decisions typically articulate *326 a standard that accommodates Troxel, their best interests of the child statutes, and case law precedent. See, e.g., Blixt v. Blixt, 437 Mass. 649, 774 N.E.2d 1052, 1060 (2002) (adopting a state standard that requires grandparent to allege and prove that parent's failure to grant visitation will cause the child significant harm by adversely affecting the child's health, safety, or welfare); see also Hamit v. Hamit, 271 Neb. 659, 715 N.W.2d 512, 519-24 (2006) (discussing Troxel's due process requirement in the context of Nebraska statutes that include a clear and convincing evidence standard).
Turning to how Colorado accommodates the General Assembly's best interests of the child standard of the grandparent visitation statute consistent with Troxel, we observe first that Colorado's grandparent visitation statute differs from the Washington statute at issue in Troxel. Colorado's statute does not suffer from the same "breathtakingly broad" scope of the Washington statute. Washington's statute allowed any person to petition for visitation at any time; Colorado's statute is more limited.
In contrast, Colorado's statute concentrates on grandparent visitation in the limited circumstance of a court proceeding wherein "there is or has been a child custody case or a case concerning the allocation of parental responsibilities relating to that child." § 19-1-117(1), C.R.S. (2005). This statute prohibits a court from entering a grandparent visitation order unless the court finds that it is in the best interests of the child. § 19-1-117(2).
In construing a statute involving the best interests of the child, our objective is to interpret the statute in a manner consistent with the plain language and with our understanding of the General Assembly's intent. In re Marriage of Ciesluk, 113 P.3d 135, 146-47 (Colo.2005). The legislature intends a statute to be constitutional; accordingly, we must construe a statute in a manner that avoids constitutional infirmity, if possible. Bd. of Dirs., Metro Wastewater Reclamation Dist. v. Nat'l Union Fire Ins. Co., 105 P.3d 653, 656 (Colo.2005). When the case presents an issue of law of first impression to us, we may look to instructive decisions of other jurisdictions. Ciesluk, 113 P.3d at 142.
We determine that Colorado's grandparent visitation statute can be construed and implemented consistent with the due process requirement announced in Troxel. In doing so, we agree with the court of appeals that Colorado courts must give "special weight" to parental determinations when considering grandparent visitation petitions. See In re Custody of C.M., 74 P.3d 342, 345 (Colo.App.2002). We also agree with the court of appeals that adoptive parents have the same right as natural parents in controlling the upbringing of their child. R.A. II, 121 P.3d at 298. Section 19-5-211(1) of our statutes provides that "the person adopted shall be, to all intents and purposes, the child" of the adoptive parent.
We disagree, however, with the court of appeals ruling in favor of a standard that requires grandparents to demonstrate parental unfitness, or substantial or significant harm to the child from the parental determination. First, the Supreme Court declined to impose such a standard on state courts, so long as they give "special weight" to parental determinations. Second, when it incorporated its oft-spoken "best interests of the child" lodestar into the grandparent visitation statute, the General Assembly intended Colorado courts to have the authority to impose grandparent visitation schedules in appropriate cases, despite parental wishes, so long as they are consistent with constitutional requirements.
The court of appeals' reliance on the Oklahoma case, In re Herbst, does not give sufficient latitude to the General Assembly's grandparent visitation statute or the record in this case. Other jurisdictions recognize that best interests of the child judicial decisions, consistent with Troxel, can include circumstances where there has been a significant pre-existing relationship between child and grandparent prior to the court proceeding, see Blixt, 774 N.E.2d at 1060, or when a bond of care and affection develops between grandparent and grandchild and is continued or commenced after the death of one or both parents, see Moriarty v. Bradt, 177 N.J. 84, *327 827 A.2d 203, 223-24 (2003). The case before us may involve such a circumstance.
We use these examples, not by way of limitation, but to illuminate that Colorado's standard should turn upon a presumption and burden of proof requirement in favor of parental determinations that also takes into account the child's interest in maintaining the grandparent/grandchild relationship. Troxel cautions that judges must avoid the temptation to substitute the court's judgment for the parent's judgment: "[T]he Due Process Clause does not permit a State to infringe on the fundamental right of parents to make child rearing decisions simply because a state judge believes a `better' decision could be made." 530 U.S. at 72-73, 120 S.Ct. 2054.
As opposed to the contesting parents we had before us in Ciesluk, 113 P.3d at 146-47, wherein we rejected a presumption in favor of one parent over the other because each parent shares equally in the burden of demonstrating how the child's best interests will be impacted by the proposed relocation of one of the parents, a dispute between parents and grandparents regarding grandparent visitation is not a contest between equals. See Stacy v. Ross, 798 So.2d 1275, 1280 (Miss.2001) ("The determination whether parents are unreasonable in denying visitation in whole or part to grandparents is not a contest between equals."); Glidden v. Conley, 175 Vt. 111, 820 A.2d 197, 205 (2003) (stating that a dispute between a fit custodial parent and the child's grandparent over grandparent visitation is not a contest between equals).
Applying Troxel to its best interests of the child grandparent visitation statute, the Montana Supreme Court has implemented a requirement that the petitioning grandparent prove by clear and convincing evidence that it is in the child's best interests to have contact with the grandparent, and, in the case of an objecting fit parent, that the presumption in favor of the parents' wishes has been rebutted. See Polasek v. Omura, 332 Mont. 157, 136 P.3d 519, 521-22 (2006).
The Montana approach, as opposed to the Oklahoma approach, would better accommodate the General Assembly's best interests of the child intent consistent with Troxel. In adopting this standard, we take into account section 13-25-127, C.R.S. (2005). This statute generally provides that the burden of proof in a civil action is preponderance of the evidence. Nevertheless, to comply with constitutional requirements, a different burden of proof may apply. Id.
In People in re A.M.D., 648 P.2d 625, 631 (Colo.1982), we adopted a clear and convincing evidence standard for parental rights termination proceedings to implement the Supreme Court's decision in Santosky v. Kramer, 455 U.S. 745, 769, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). The legislature then amended our statutes to incorporate such a standard into the statute addressing termination of parental rights. § 19-3-604(1).
In section 2-4-201(1)(a)-(d), the General Assembly has expressed its intentions with regard to the enactment of statutes; it intends compliance with constitutional requirements, effectiveness of the entire statute, a just and reasonable result, and a result feasible of execution. While it did not expressly include the clear and convincing standard in the grandparent visitation statute, we conclude upon reading our statutes in context that the General Assembly intends courts to make grandparent visitation determinations in appropriate proceedings that accord with due process requirements respecting parental determinations. Employing the clear and convincing evidence standard in judicial grandparent visitation proceedings will accord due process to parents, as it does in the parental rights termination context.
Thus, in order to effectuate the General Assembly's intent consistent with Troxel, we construe Colorado's statute to contain a presumption that parental determinations about grandparent visitation are in the child's best interests. See Troxel, 530 U.S. at 67, 120 S.Ct. 2054 ("[T]here is a presumption that fit parents act in the best interests of their children."). However, this presumption is rebuttable in the context of a section 19-1-117 petition when the grandparent articulates facts in the petition and goes forward with clear and convincing evidence at a hearing that the parent is unfit to make the grandparent visitation decision, or that the *328 visitation determination the parent has made is not in the best interests of the child. If the grandparent meets this evidentiary burden, the burden then shifts to the parent to adduce evidence in support of the parental determination. The grandparent bears the ultimate burden of proving by clear and convincing evidence that the parental determination is not in the child's best interests and the visitation schedule grandparent seeks is in the child's best interests.
This intermediate standardmore stringent than a preponderance of the evidence but less stringent than a substantial harm standardis appropriate to reconcile the General Assembly's intent and Troxel. This heightened standard will ensure that trial courts, in looking to the best interests of the child as directed by the grandparent visitation statute, will adequately give the "special weight" required by Troxel to parental determinations. In order to satisfy the second requirement of Troxel, that in issuing a grandparent visitation order a court must identify those "special factors" justifying the order, trial courts must make findings of fact and conclusions of law supported by evidence in the record. See Troxel, 530 U.S. at 68, 120 S.Ct. 2054 (holding that courts must demonstrate consideration and resolution of those "special factors that might justify the State's interference with the parents' decision").

D.

Application to This Case
We have reviewed both of the magistrate's orders: the October 2, 2002, order in which he granted the adoption and ordered grandparent visitation, and the September 24, 2003, order in which, on remand, he affirmed his order saying that he had given special weight to the Parent's wishes. But, the magistrate did not make sufficient findings of fact or identify the "special factors" to which he gave weight in entering these orders.
The record demonstrates that Parents agreed that it would be in the best interests of the child to have visitation with the Grandparents because a pre-existing bond of love and care predated their guardianship and the adoption. The Grandparents agreed that the Parents were responsible for controlling the child's upbringing. This case primarily involves Parents' contention that they should be left with sole discretion to determine the visitation schedule, versus the Grandparents' insistence on a court order to assure visitation.
Here, the record contains evidence that supports the existence of (1) a pre-existing bond of love and care that existed between the child and the Grandparents prior to the adoption; (2) the tragedy the child suffered in losing both parents at different times; and (3) the potential of the child losing contact with the Grandparents should the Parents decide to end the contact.
This is not a case where the Grandparents sought a visitation order simply on an assertion that the grandchild will benefit from grandparent visitation. In such an instance, courts must refrain from considering the grandparent's petition. See Lulay v. Lulay, 193 Ill.2d 455, 250 Ill.Dec. 758, 739 N.E.2d 521, 533 (2000) ("Generalizations about whether grandparent visitation is beneficial to the children are not determinative of this case."); In re Herbst, 971 P.2d at 399 ("[A] vague generalization about the positive influence many grandparents have upon their grandchildren falls far short of the necessary showing of harm which would warrant the state's interference with this parental decision regarding who may see a child."); Glidden v. Conley, 175 Vt. 111, 820 A.2d 197, 205 (2003) ("That a child might benefit from contact with a grandparent ... [is] not the kind of compelling circumstance[] contemplated by the Constitution or this decision.").
Our role does not include making findings of fact. It does include determining the appropriate requirements for accommodating the General Assembly's intent consistent with Troxel. We recognize that the Parents, the Grandparents, the magistrate, the district court, and the court of appeals did not have the advantage of the decision we announce today.
On remand, should the parties wish to proceed, we direct the magistrate to reopen the evidentiary proceedings to include evidence *329 addressing the current best interests of the child. After the evidentiary proceedings, the magistrate shall make findings of facts and conclusions of law consistent with the parental presumption and grandparent burden of proof requirements contained in this opinion.

III.
Accordingly, we reverse the judgment of the court of appeals and remand with directions that it return this case to the district court for further proceedings consistent with this decision.
Justice COATS dissents, and Justice EID joins in the dissent.
Justice COATS, dissenting.
While I too believe the court of appeals erred in finding a substantive due process limitation on the state's ability to override visitation decisions of fit parents, I think the majority has fallen into substantially the same error. Where the appellate court seeks to narrowly circumscribe the nature of a compelling interest capable of justifying state infringement on a fit parent's fundamental constitutional interest in his child's associations, the majority simply legislates a new statutory scheme, reflecting its own approach for avoiding possible constitutional conflict. Each, in its own way, however, gets out ahead of the United States Supreme Court in imposing constitutional limitations on the democratic process.
Because the United States Supreme Court has expressly declined to define the scope of any parental due process right in the visitation context, I would similarly refrain from attempting to do so. Because I also believe the magistrate's visitation order in this case rests comfortably within the due process limitations so far identified by the Supreme Court, I would affirm his order.
Generally speaking, the majority does two different things with which I strongly disagree. First, it balloons the Supreme Court's plurality holding in Troxel v. Granville, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000), into far more than the disapproval of a particular application of a sweepingly broad visitation statute. Far from imposing any constitutionally prescribed evidentiary scheme on grandparent visitation orders, or requiring findings of "special factors," maj. op. at 322, 325, the Supreme Court merely found unconstitutional a particular grandparent visitation order that failed to give "at least some special weight" to the decision of an admittedly fit parent to permit grandparent visitation to a lesser extent than the grandparents wanted. Troxel, 530 U.S. at 70, 120 S.Ct. 2054. The Supreme Court described this "special weight" requirement only in the breach, by finding that it was not met in a visitation order applying a statute that put every challenging third party on equal footing with fit parents and overriding a fit mother's decision on grounds amounting to no more than a "simple disagreement" about the benefits of grandparent visitation. Id. at 72, 120 S.Ct. 2054.
Second, rather than confining itself to the constitutionality of a particular application, as the Supreme Court had done in Troxel and the court of appeals had done below, the majority chooses to rewrite the controlling statute. Maj. op. at 327-28. Unlike Santosky v. Kramer, 455 U.S. 745, 769, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), where the Supreme Court expressly imposed a "clear and convincing" burden on the extraordinary and final act of terminating parental rights, Troxel suggests no such burden for permitting grandparent visitation. Cf. Colorado v. Connelly, 479 U.S. 157, 167-68, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986) ("Although we have stated in passing that the state bears a `heavy' burden in proving waiver (citations omitted), we have never held that the `clear and convincing evidence' standard is the appropriate one."). Even if the majority were correct in discovering the Supreme Court's hidden intent in requiring "special weight," its authority to conform Colorado's statute would seem to be limited to choosing among reasonable interpretations of the statute as written by the legislature, People v. Tabron, 190 Colo. 149, 160, 544 P.2d 372, 379-80 (1976) (declining to judicially rewrite obscenity statute to render it constitutional); see also Blount v. Rizzi, 400 U.S. 410, 419, 91 S.Ct. 423, 27 *330 L.Ed.2d 498 (1971) ("[I]t is for Congress, not this Court, to rewrite the statute."), or severing any constitutionally offensive portions, see § 2-4-204, C.R.S. (2005). Here the majority has done neither.
I find it particularly problematic for the majority to rewrite the entire statutory scheme in this case, where the statute at issue is extremely circumspect in limiting nonparent visitation orders and where the particular visitation order at issue was imposed as a condition of adoption. In stark contrast to the Washington statute addressed by the Supreme Court in Troxel, Colorado's statute permits nonparental visitation orders only in favor of grandparents, and only in situations in which the child's normal custody arrangements have already been disrupted. § 19-1-117, C.R.S. (2005). Because both of the child's natural parents had died in this case, the guardian visitation decision being challenged by the grandparents was not the decision of a parent. I would be particularly reluctant to extend a parent's substantive due process rights in the context of visitation where the matter at issue is actually one of conditioning adoption of the child on adequate visitation with his natural grandparents.
The Due Process Clause has been held to include a substantive component and to protect a fundamental interest of parents in the care, custody, and upbringing of their children. See, e.g., Troxel, 530 U.S. at 67, 120 S.Ct. 2054; Prince v. Massachusetts, 321 U.S. 158, 166, 64 S.Ct. 438, 88 L.Ed. 645 (1944). Since the Court found this constitutional limitation, however, its due process jurisprudence has undergone a metamorphosis, such that the Court has thus far been unwilling to extend it in the visitation context beyond merely prohibiting interference with a fit parent's visitation decisions without more than a difference of opinion about the child's best interests. Troxel, 530 U.S. at 72-73, 120 S.Ct. 2054 (plurality opinion). At least in my mind, there is little reason to think that a majority of this court is better suited to prescribe the framework for these difficult family decisions, under the guise of constitutional mandate, than the voters, through their elected representatives. Cf. Troxel, 530 U.S. at 93, 120 S.Ct. 2054 (Scalia, J., dissenting).
Even if a grandparent visitation order made as an integral part of an adoption proceeding must give special weight to the wishes of the prospective adoptive parents, I believe the magistrate's order below fully complied. Unlike Troxel, he expressly gave "[s]pecial significance" to the guardians' wishes to avoid court-ordered visitation. As noted by the majority, the child's guardians testified that court-ordered visitation "placed stress on the family," and they were concerned that the grandparents "had not properly acknowledged the relationship that the child has to his legal parents." Maj. op. at 321. But the magistrate stated that he was "not confident that the grandparent visitation" would be allowed absent a court order. He went on to hold that, in light of the deaths of both of the child's natural parents and his close proximity to, and relationship with, his maternal grandparents during the first four years of his life, it would be in the child's best interests to set a specific visitation schedule to avoid future conflicts between the parties. Because the magistrate in this case plainly did not fail to give "at least some special weight" to the visitation decision of the child's guardians, in the manner held unconstitutional in Troxel, I would affirm his order.
I therefore respectfully dissent. I am authorized to state that Justice EID joins in this dissent.
NOTES
[1] The issues presented for review are:

(1) Whether the Court of Appeals adopted the proper standard to weigh the parents' wishes in a grandparent visitation dispute.
(2) Whether the Court of Appeals erred by not remanding the case to the trial court for a hearing based upon the new standard.
[2] At no time during this litigation did the magistrate enter an order containing findings of fact and conclusions of law identifying the evidence and the factors he relied upon in issuing the grandparent visitation order. At the time of adoption, the child had spent the first four years of his life in Reno in close proximity to the Grandparents and the next four years in close proximity to the Parents. The evidence that would have supported such an order includes the following: (1) when the child's father died, the family had been living in Reno and the Grandparents, who also lived there, helped the mother and child during this difficult transition; (2) the child lost both of his natural parents; and (3) as of the time of the adoption, the Grandparents and the child had already formed "a loving relationship."
[3] Concurring in the judgment, Justice Souter observed, "there is no need to decide whether harm is required or to consider the precise scope of the parent's right or its necessary protections," because in his view the Washington State statute swept too broadly in allowing any person at any time to seek visitation. Troxel, 530 U.S. at 76-77, 120 S.Ct. 2054 (Souter, J., concurring). Concurring in the judgment, Justice Thomas favored applying a strict scrutiny standard of review to the case but joined the judgment because "the State of Washington lacks even a legitimate governmental interestto say nothing of a compelling onein second-guessing a fit parent's decision regarding visitation with third parties." Id. at 80, 120 S.Ct. 2054 (Thomas, J., concurring).