**In re the Matter of V.R.P.F. and S.R.P., Children, and Concerning Linda J. Myers and Thomas S. Myers, Petitioners–Appellants,**

and

**Ronald J. Franklin and Cindy G. Piatt, Respondents–Appellees.**

No. 96CA1379.

Colorado Court of Appeals, Div. IV.

May 8, 1997.

David A. Palmer, Grand Junction, for Petitioners–Appellants.

No Appearance for Respondents–Appellees.

Opinion by Judge BRIGGS.

Petitioners, Linda J. and Thomas S. Myers (grandparents), appeal the trial court's affirmance of a magistrate's determination that they lack standing under the Uniform Dissolution of Marriage Act, §§ 14–10–123(1)(b) and 14–10–123(1)(c), C.R.S. (1987 Repl.Vol. 6B), to seek custody of two minor children. We affirm as to one child and reverse and remand for further proceedings and findings as to the other.

The grandparents filed a petition for custody of two minor children, together with requests for temporary custody, a custody evaluation, and a temporary restraining order against the children's mother, Cindy G. Piatt (mother). The biological father of S.R.P., the older child, is deceased. The biological father of V.R.P.F., the younger child, is the grandparents' son, Ronald J. Franklin. He filed an answer and cross-petition, in which he asserted that an award of custody to the grandparents would be in the children's best interests.

The magistrate found that the mother had physical custody of the older child and the grandparents had not at any time had physical custody of the child for a period of at least six months. As to the younger child, the magistrate found that, although the grandparents had physical custody of the child and their physical custody had extended over six months, they had not had physical custody at a time when their granddaughter was not also in the physical custody of one of her parents. The magistrate therefore concluded the grandparents lacked standing to seek custody of either child.

On review, the trial court found that:

[A]lthough *the child* was cared for by the [grandparents] and spent a great deal of time at [their] residence, *the child* was not in the physical custody of the [grandparents] for a six month period. [Mother] had *the child* in her custody many times within that period. (emphasis added)

It is not clear from this finding that the court considered the grandparents' standing separately as to each child. Nevertheless, based on this finding, the court affirmed the magistrate's order as to both children.

The grandparents assert the trial court erred in determining that they lacked standing to seek custody of either child. They argue that, for the older child, they provided more parenting than did the mother, who essentially abandoned the child. As to the younger child, their granddaughter, they assert they had physical custody for more than six months and that, even though the child's father, their son, sometimes resided with them, this is not a sufficient basis to deny them standing.

Sections 14–10–123(1), C.R.S. (1997 Repl. Vol. 6B) specifies the two circumstances in which a nonparty has standing to commence a child custody proceeding:

(b) By a person other than a parent, by filing a petition seeking custody of the child in the county where the child is permanently resident or where [the child] is found, but only if the child is not in the physical custody of one of his parents; or

(c) By a person other than a parent who has had physical custody of a child for a period of six months or more, if such action is commenced within six months of the termination of such physical custody.

■ Here, in support of the grandparents' various motions, they and their son filed several affidavits. However, as to the older child, no facts set forth in the affidavits contradict the magistrate's finding that the mother had physical custody of the child when the grandparents filed their petition and that they at no time had physical custody for a period of at least six months. Accordingly, we agree the grandparents lacked standing to seek custody of S.R.P.

■ As to V.R.P.F., the younger child, the facts set forth in the affidavits indicate no more than that each parent had some occasional contact with the child. The magistrate nevertheless determined the grandparents lacked standing based on the finding that they did not have physical custody of the child "at a time when she was not in the physical custody of one of her parents." The meaning of this finding is not clear.

To the extent the finding means one of the parents had physical custody of the child to the same or a greater extent than the grand-

parents, or even for any substantial period of time, it is not supported by the limited record before us. To the extent the finding means no more than that a parent on occasion visited the child at the grandparents' home, or that a parent on occasion stayed overnight at the grandparents' home, or even that the child on occasion spent a night with one of the parents at a different location, such a finding does not necessarily defeat the grandparents' standing under § 14–10–123(1)(b) or § 14–10–123(1)(c).

■ The statutory grant of standing to a non-parent to seek legal custody of a child constitutes legislative recognition of the importance of "psychological parenting" to the best interests of a child. *See In re Custody of C.C.R.S.*, 872 P.2d 1337 (Colo.App.1993), *aff'd*, 892 P.2d 246 (Colo.1995). For example, when a child has been in the physical custody of a non-parent for six months with no contact from the child's parents, the child may have formed an important attachment with the non-parent. At the same time, the attachment between the child and the parents may have become attenuated.

The issue becomes more complicated when the child has continued to have contact with either or both parents. The question raised is the point at which the non-parent can no longer be deemed to have had the requisite "physical custody."

A division of this court addressed the meaning of "physical custody" as used in § 14–10–123(1)(c) in *In re Custody of C.C.R.S., supra.* There, the biological mother had agreed to give the non-parents custody of the child shortly after his birth, in contemplation of formal relinquishment and adoption proceedings. After the child had been with the non-parents almost six months, the mother had an agent notify them she had changed her mind. However, she made no personal or written demand for return of the child and did not initiate any proceedings to restore her right to custody.

In determining the meaning of "physical custody" for purposes of § 14–10–123(1)(c), the court noted the use of the phrase in other statutes:

For example, the term 'shared physical custody' as applied to parents for purposes of calculating child support means each parent keeping the child for a specified minimum number of overnight stays each year and contributing to the child's expenses in addition to payment of child support. Section 14–10–115(8), C.R.S. (1993 Cum.Supp.).

*In re Custody of C.C.R.S., supra,* 872 P.2d at 1341.

The court in *C.C.R.S.* determined that "physical custody" literally meant physical custody and control. Even though the biological mother had at least visited the child on a couple of occasions since his birth, the court concluded, and the supreme court agreed, that the non-parents had standing to seek custody of the child pursuant to § 14–10–123(1)(c).

The decision in *C.C.R.S.* confirms that a non-parent's standing to seek legal custody of a child is not defeated as a matter of law by any isolated contact between parent and child if the child is otherwise in the physical custody of the non-parent as statutorily prescribed. As a result, to resolve the issue of standing the court must consider the nature, frequency, and duration of contacts between parent and child.

Here, the facts set forth in the affidavits indicate that the younger child resided with her grandparents for over six months, including when they filed their petition. However, during that time, on occasion, the child's father stayed at the grandparents' home. In addition, on occasion, particularly on a weekend, the child stayed overnight with her mother at a different location.

The record does not establish the nature, frequency, and duration of the contacts between the younger child and her parents. In addition, as already noted, the trial court's order only refers to "the child." It thus appears the court may not have considered the grandparents' standing separately as to each child.

We therefore conclude it is necessary to remand this matter to the trial court for further proceedings and findings concerning the grandparents' standing to seek custody

of the younger child, their granddaughter. Any question concerning the impact on the best interests of the children if they are separated will not arise until after the court has resolved the issue of standing, and then only if the court determines the grandparents have standing.

The order dismissing the petition for custody is affirmed as to S.R.P., the older child. It is reversed as to V.R.P.F., the granddaughter, and the cause is remanded for further proceedings and findings concerning the grandparents' standing to seek custody of their granddaughter under § 14–10–123(1)(c).

STERNBERG, C.J., and HUME, J., concur.