In re the Parental Responsibilities of Randy REESE and Candice Reese, Petitioners–Appellees,

and

Adriana Henderson, Respondent–Appellant,

and

Concerning E.B.H., a Child.

No. 08CA2428.

Colorado Court of Appeals, Div. II.

Feb. 4, 2010.

Covington Law Firm, P.C., Lisa M. Covington, Denver, Colorado, for Petitioners–Appellees.

The Viorst Law Offices, P.C., Anthony Viorst, Denver, Colorado, for Respondent–Appellant.

Opinion by Judge CARPARELLI.

Adriana Henderson is the adoptive mother of E.B.H. She appeals from the order awarding sole decision-making authority and majority parenting time to Randy Reese and Candice Reese (petitioners). We vacate the order and remand for factual findings based on clear and convincing evidence.

## I.  Background

Mother began caring for E.B.H., who is the biological child of her husband's cousin, soon after the child was born in 2004. The petitioners, who attended the same church as mother, offered to assist her in caring for the child. After mother agreed, the petitioners began to care for the child and their care gradually increased until early 2005 when, according to the petitioners, the child was living full-time with them and had only minimal contact with mother. Nonetheless, mother adopted the child in July 2005.

For the next three years, mother did not object to the petitioners' care of the child, including taking her out of Colorado for vacations. In December 2007, a dispute arose between the parties involving mother's request to have the child for a week at Christmas, and mother reported that the child had been kidnapped. A police officer went to the petitioners' home and saw that the child was living with them. No charges were brought as a result of the incident. However, the petitioners then filed a petition for allocation of parental responsibilities pursuant to section 14–10–123, C.R.S.2009.

The trial court appointed a child and family investigator (CFI) who conducted an investigation and recommended that the petitioners have primary parental responsibilities. After addressing the parenting time considerations provided in section 14–10–124(1.5), C.R.S.2009, and concluding that the record supported the CFI's findings regarding the allocation of decision-making responsibility, the court found it was in the child's best interest to grant the petitioners sole decision-making responsibility and nearly all parenting time. The court granted mother parenting time of one weekday per week and every other Saturday, additional holiday time, and no overnight time.

## II.  Protection of Mother's Constitutional Right to Parent Her Child

Mother argues that the trial court did not give special weight to her determination of the child's best interests, and, in so doing, violated her constitutional rights as a parent. We conclude that mother was entitled to a presumption that, as a fit parent, she would act in the best interests of the child, and that this presumption could be rebutted only by findings based on clear and convincing evidence that the grant of decision-making responsibility and parenting time to the petitioners is in the child's best interests. Because the trial court did not apply this standard of proof, we conclude that it erred. In so holding, we reject the petitioners' contention that, in accordance with *In Interest of E.L.M.C.*, 100 P.3d 546 (Colo.App.2004), the court's finding that they were psychological parents was sufficient to

protect mother's rights. We also reject mother's contention that, in accordance with *In re Marriage of Ciesluk,* 113 P.3d 135, 145 (Colo.2005), the petitioners were required to show that she was unfit or that her determination of the child's best interests would result in substantial or significant harm to the child.

### A. Standard of Review

■ Although the allocation of parental responsibilities is generally within the sound discretion of the trial court, an appellate court reviews the legal standard applied by the court de novo. *See In re Marriage of McSoud,* 131 P.3d 1208, 1214 (Colo.App. 2006).

### B. Section 14–10–123

■ Section 14–10–123 permits a non-parent to petition for allocation of parental responsibilities when, among other circumstances, the child is not in the physical custody of a parent, or the petitioner has had physical care of the child for a period of six months or more and the petition is filed within six months after that care terminated. § 14–10–123(1)(b)–(c), C.R.S.2009. "[This] statutory grant of standing to a non-parent to seek legal custody of a child constitutes legislative recognition of the importance of 'psychological parenting' to the best interests of a child." *In re V.R.P.F.,* 939 P.2d 512, 514 (Colo.App.1997).

When a non-parent has standing under section 14–10–123, the court has statutory authority to allocate parental responsibilities based on the best interests of the child in accordance with section 14–10–124, C.R.S. 2009. *See In re Custody of C.C.R.S.,* 892 P.2d 246, 251 (Colo.1995). Pursuant to section 14–10–124(1.5), a court allocates parental responsibilities "in accordance with the best interests of the child giving paramount consideration to the physical, mental, and emotional conditions and needs of the child," and considering all relevant factors, including those listed in subsections (1.5)(a) and (b).

### C. Parental Determinations Accorded Special Weight

The Supreme Court has consistently held that the "Due Process Clause of the Four-teenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Troxel v. Granville,* 530 U.S. 57, 66, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000); *accord Santosky v. Kramer,* 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *Meyer v. Nebraska,* 262 U.S. 390, 399, 43 S.Ct. 625, 67 L.Ed. 1042 (1923).

In *Troxel,* the state statute gave any person standing to seek visitation rights at any time and gave courts authority to grant such rights whenever they concluded that such visitation might serve the best interests of the child. The Supreme Court ruled that, as applied by the trial court, the statute violated the Due Process Clause because it placed no limits on either the persons who could petition for visitation or the circumstances in which such a petition could be granted. *Troxel,* 530 U.S. at 72–73, 120 S.Ct. 2054. The Court noted that the trial court's order granting the grandparents visitation "was not founded on any special factors that might justify the State's interference with [the mother's] fundamental right to make decisions concerning the rearing of her two daughters." *Id.* at 68, 120 S.Ct. 2054. The Court also concluded that the trial court not only gave no "special weight" to the mother's determination of her daughters' best interests, but also appeared to have presumed the grandparents' request should be granted unless the children would be adversely affected. The Court held that, in so doing, the trial court had placed on the fit mother the burden of proving that visitation would not be in the best interests of her daughters. *Id.* at 69, 120 S.Ct. 2054. This, the Court said, "directly contravened the traditional presumption that a fit parent will act in the best interest of his or her child." *Id.*

### D. Clear and Convincing Proof Required to Overcome Presumption Favoring a Parent's Determination

Neither section 14–10–123 nor the decision in *Troxel* states how the presumption affects the proof process or how courts must accord special weight to it.

In *Adoption of C.A.,* the Colorado Supreme Court addressed the *Troxel* "special factors" and "special weight" requirements. *In re Adoption of C.A.,* 137 P.3d 318, 324, 327 (Colo.2006). Although the court did so in the context of grandparent visitation under section 19–1–117, C.R.S.2009, which is not at issue here, we conclude that the court's rulings are equally applicable in the context of non-parent petitions under section 14–10–123.

In *C.A.,* the child's grandparents sought visitation under section 19–1–117. Although that statute does not enumerate special factors courts must consider, the supreme court stated that "many if not all of the factors contained in section 14–10–124(1.5)(a)(I)–(XI), C.R.S. [2009], may also be relevant for the court's consideration when considering a grandparent visitation petition." *C.A.,* 137 P.3d at 324. In addition, the court held that findings of fact and conclusions of law identifying the special factors justifying the order and evidence supporting those findings satisfy the *Troxel* "special factors" requirement. *Id.* at 327.

The supreme court also addressed the *Troxel* "special weight" requirement and concluded that employing a clear and convincing standard in such proceedings would accord due process to parents, just as it does in the context of termination of parental rights. *Id.* Accordingly, the court construed section 19–1–117 "to contain a presumption that parental determinations about grandparent visitation are in the child's best interests." *Id.* However, the court also ruled that this presumption may be rebutted by proof by clear and convincing evidence that the parent is unfit or that the parent's visitation determination is not in the best interests of the child.

The court held that application of this standard ensures that trial courts "will adequately give the 'special weight' required by *Troxel* to parental determinations." *Id.* at 328.

■ Accordingly, based on *C.A.,* we conclude that when a non-parent seeks an allocation of parental responsibilities contrary to the wishes of a parent, the court may not allocate parental responsibilities to the non-parent unless it complies with the *Troxel*

requirement to accord "special weight" to the parent's determination of the best interests of the child. We further conclude that, to do so, the court must consider all relevant factors including those listed in section 14–10–124(1.5)(a) and (b). In addition, the court may allocate parental responsibilities to the non-parent only if it enters findings based on clear and convincing proof that the best interests of the child justify such an allocation. *C.A.,* 137 P.3d at 327–28; *see In re C.T.G.,* 179 P.3d 213, 226 (Colo.App.2007) (concluding stepfather's evidence did not satisfy either preponderance of the evidence standard or the clear and convincing evidence standard); *cf. L.L. v. People,* 10 P.3d 1271, 1277 (Colo. 2000) (when a department of social services initiates dependency or neglect action, the court may continue department's custody and appoint permanent guardians based on the preponderance of the evidence); *In re Parental Responsibilities of M.J.K.,* 200 P.3d 1106, 1112 (Colo.App.2008) (when a parent who has voluntarily relinquished custody and consented to legal guardianship initiates proceedings to terminate the guardianship under section 15–14–201, C.R.S.2009, the court may deny the petition upon finding, based on the preponderance of the evidence, that termination is not in the best interests of the ward).

To the extent that mother contends that the court was required to explicitly state that it accorded her the *Troxel* presumption that the child's best interests will be satisfied by placing the child with her, we disagree. Although it is good practice for courts to do so, we conclude that, as in *C.A.,* explicit application of the clear and convincing standard of proof is necessary to accord special weight to the parent's determination of the child's best interests.

■ Thus, in accordance with *Troxel* and *C.A.,* we conclude that a parent's liberty interest in the care, custody, and control of his or her child is not infringed when the parent's determination regarding the best interests of the child is overcome by clear and convincing proof of relevant factors and the court's determination of the best interests of the child.

Before applying this standard, we address and reject the petitioners' contention that the court's finding based on clear and convincing evidence that they are "psychological parents" fulfilled the *Troxel* special weight requirement. We then address and reject mother's contention that the court could not properly allocate parental responsibilities to the petitioners without first finding that she was unfit or that an allocation was necessary to prevent harm to the child.

## E.  Status as Psychological Parent Not Sufficient

We first reject the petitioners' contention that the trial court's finding, based on clear and convincing evidence, that they are psychological parents was sufficient to accord special weight to mother's parental rights. The court first made findings based on clear and convincing evidence. However, shortly thereafter, it said its finding was by a preponderance of the evidence. For purposes of analysis we assume, without deciding, that the finding was based on the higher standard. The petitioners' argument rests on the holding in *E.L.M.C.*, and the trial court's explicit reference to and reliance on that case.

The facts in *E.L.M.C.* are distinguishable. There, an adoptive parent and her former domestic partner sought to modify a joint custody order that had been entered in response to their joint petition under section 14–10–123. After a hearing on permanent orders, the trial court awarded joint parental responsibilities to the parties. *E.L.M.C.*, 100 P.3d at 549–50. A division of this court concluded that although the trial court had not explicitly found that the former domestic partner was a "psychological parent," the trial court had jurisdiction to consider the former domestic partner's petition for parenting time because "the trial court properly found facts consistent with the psychological parent doctrine, as implicitly recognized by [section 14–10–123(1)(c), C.R.S.2009]." *Id.* at 553, 562. This determination affirmed the former domestic partner's standing and the trial court's exercise of its authority under the statute.

After reaching this conclusion, the division stated "that emotional harm to a young child is intrinsic in the termination or significant curtailment of the child's relationship with a psychological parent under any definition of that term." *Id.* at 561. Based on (1) "overwhelming evidence showing [the domestic partner] had become a psychological parent"; (2) the trial court's findings consistent with the psychological parent doctrine; and (3) its conclusion that curtailment of the relationship between the psychological parent and the child necessarily results in emotional harm to the child, the division concluded that "for purposes of permanent orders this threatened harm both rebutted the *Troxel* presumption in favor of [the adoptive parent] and constituted a compelling state interest justifying court modification of her parenting plan." *Id.* at 562.

We decline to adopt the *E.L.M.C.* division's reasoning that the intrinsic threat of emotional harm to the child from curtailment or termination of the child's relationship with a psychological parent is, itself, sufficient to satisfy the requirement that the court give special weight to the presumption that a parent's determination is in the best interests of the child. *Id.* In our view, such a conclusion would be contrary to section 14–10–124 and *C.A.* Section 14–10–124 identifies non-exclusive factors courts should consider when determining the best interests of the child. It requires courts to make the ultimate determination.

Accordingly, we decline to interpret *E.L.M.C.* as precedent for a legal conclusion that proof by a preponderance of the evidence that a non-parent petitioner is a psychological parent not only establishes standing under section 14–10–123, but also demonstrates that (1) a court has accorded special weight to the parent's determination of the child's best interests; or (2) the child would be harmed by a court's failure to order an allocation of parenting time to the non-parent. We also decline to conclude that, even to the extent that a fact finder might properly infer that failure to allocate parental responsibilities to a psychological parent would harm the child, such an inference would, in itself, accord special weight

to the parent's determination of the child's best interests.

### F. Proof of Unfitness or Harm Not Required

■ We also reject mother's contention that in accordance with *Ciesluk*, 113 P.3d at 145, "in the absence of demonstrated harm to the child, the best interests of the child standard is insufficient to serve as a compelling state interest overruling the parents' fundamental rights."

In *Ciesluk*, the supreme court concluded that section 14–10–129 did not infringe on the parent's right to travel and that the parent was not entitled to a presumption favoring that right. There, the mother had asked the trial court to amend permanent orders entered in the dissolution of marriage to permit her and the child to move out of Colorado. The supreme court rejected the mother's contention that, absent a presumption in favor of allowing her to move, section 14–10–129 unconstitutionally infringed on her right to travel. *Id.* at 142–48. Instead, it held that in proceedings to amend permanent orders "both parents share equally the burden of demonstrating how the child's best interests will be served." *Id.* at 147.

The supreme court made the comment upon which mother relies in the context of rejecting the analysis of the Minnesota courts. The court's comment was not essential to its holding.

Moreover, the following year, in *C.A.*, the supreme court ruled that the presumption favoring a parent's determination regarding the best interests of the child may be rebutted by proof by clear and convincing evidence of *either* the parent's unfitness *or* the best interests of the child, and that application of this standard ensures that trial courts "will adequately give the 'special weight' required by *Troxel* to parental determinations." *C.A.*, 137 P.3d at 328.

For these reasons, and because the decision in *C.A.* does not require a finding of demonstrated harm to the child, we reject mother's contention that the presumption favoring her parental rights can only be overcome by proof of her unfitness or demonstrated harm to the child.[1]

### G. Analysis and Conclusions

Here, the record does not demonstrate that the court accorded any "special weight" to mother's liberty interest in the care, custody, and control of the child.

The court entered its orders regarding parenting time and decision-making responsibility "based upon the standard of the best interest of the child." However, it did not state that it had done so based on clear and convincing evidence.

■ Although the court found that the petitioners had "more than established by clear and convincing evidence as a matter of fact that they are psychological parents to this child," this finding was not sufficient. In our view, this finding only determined that the petitioners had standing to seek parental responsibilities under the statute. Moreover, shortly after making that threshold finding, the court found that the petitioners had "met the burden of proving by a preponderance if not more that they are psychological parents." Thus, we cannot conclude that the court made its allocation of parental responsibilities based on clear and convincing evidence.

The petitioners also rely on (1) testimony by the CFI that the child would suffer devastating harm if she were removed from the petitioners' care and (2) the court's finding that the evidence supported the CFI's conclusion. However, the court did not explicitly find based on clear and convincing evidence that the child would be so harmed, we decline to presume that the court did so, and we have no authority to make such a finding ourselves.

■ Accordingly, the order must be vacated and the case remanded for a determination of whether the petitioners met their burden of proving by clear and convincing

---

1. We note that section 14–10–124(1.5)(a) states that a court may not grant parenting time to a party if it finds that doing so would endanger the child's physical health or significantly impair the child's emotional development. Here, however, mother is not relying on this provision or arguing that granting parenting time to the petitioners would endanger the child. Rather, she is arguing that the court may only grant the petitioners parenting time if it first concludes that granting her parenting time would endanger the child.

evidence that allocation of parental responsibilities to them was in the best interests of the child, giving paramount consideration to the child's physical, mental, and emotional conditions and needs.

Because we vacate the court's order, having concluded that, absent findings by clear and convincing evidence, the court's order infringes on mother's parent rights, we need not address mother's further argument that the order also infringed on her parental rights because it was excessively restrictive of those rights. *See McSoud*, 131 P.3d at 1216.

### III. Petitioners' Request for Appellate Attorney Fees

The petitioners request attorney fees pursuant to section 13–17–102, C.R.S.2009, alleging that mother's appeal is frivolous, groundless, and vexatious. Because of our disposition, we deny the request.

The order is vacated and the case is remanded for further findings and conclusions.

Judge CASEBOLT and Judge RICHMAN concur.