**In re the Parental Responsibilities of E.S., a Child, and Concerning Auriel Lauzon, Petitioner,**

**and**

**Timothy Smith, Appellant,**

**and**

**Laura Silvernail, Intervenor–Appellee.**

**No. 09CA2088.**

Colorado Court of Appeals, Div. I.

May 12, 2011.

As Modified on Denial of Rehearing July 7, 2011.

Betty Bass, Boulder, CO, for Appellant.

Melody K. Fuller, P.C., Melody K. Fuller, Boulder, CO, for Intervenor–Appellee.

Opinion by Judge TAUBMAN.

In this post-dissolution of marriage matter concerning parental responsibilities for E.S., who is the child of Auriel Lauzon and Timothy Smith, Smith appeals from the order allocating primary parenting time to Laura Silvernail, a nonparent. We affirm the portion of the order finding that Silvernail has standing, vacate the remainder of the order, and remand for further findings.

## I. Background

Smith's and Lauzon's marriage was dissolved in 2006 and Lauzon was allocated majority parenting time with E.S. In 2008, Lauzon moved to relocate out of state, and Smith objected, contending that E.S. should remain in Colorado. Silvernail, who is the adoptive parent of two other children of Smith and Lauzon, moved to intervene, contending that E.S. spent substantial time with her and with E.S.'s siblings, and that she was concerned that the proposed relocation would prevent E.S. from continuing to do so in the future.

After a hearing, the trial court denied Lauzon's request to relocate with E.S., and permitted Silvernail to intervene and exercise parenting time with E.S. every other weekend, as agreed between Silvernail and Smith. Five months later, E.S. moved into Silver-

nail's home full time under a temporary guardianship agreement between Smith and Silvernail. After all three parties then sought primary parental responsibilities for E.S., another hearing was held, after which the trial court ordered that (1) Silvernail has standing to request parental responsibilities for E.S.; and (2) it was in E.S.'s best interests for Silvernail to be her primary residential custodian, with limited parenting time for Smith and Lauzon. Smith's appeal followed.

## II. Standing

■ Smith first contends that the trial court erred by concluding that Silvernail has standing to request parental responsibilities for E.S. We disagree.

Preliminarily, we note that the trial court found that Silvernail has standing because it was Smith who initiated the parental responsibilities action by agreeing that Silvernail could exercise parenting time and then voluntarily placing E.S. with her full time. Although we affirm the trial court's ruling that Silvernail has standing, we do so on grounds different from those of the trial court. *See In re Marriage of Rodrick,* 176 P.3d 806, 810 (Colo.App.2007) ("An appellate court may affirm a trial court's correct judgment based on different reasoning than the trial court used.").

■ Because standing is a question of law, we review the trial court's resolution of the issue de novo. *See Adams v. Land Servs., Inc.,* 194 P.3d 429, 430 (Colo.App.2008).

■ The circumstances under which a nonparent has standing to seek parental responsibilities for a child are defined in section 14-10-123(1), C.R.S.2010. As relevant here, a nonparent has standing under section 14-10-123(1)(b), C.R.S.2010, when the child is not in the physical care of either parent. *See In Interest of K.M.B.,* 80 P.3d 914, 917 (Colo.App.2003). When determining whether a parent or nonparent has "physical care" of a child under the statute, a court considers the nature, frequency, and duration of contacts between the child and the parent and between the child and the nonparent, including the amount of time the child spends in the actual, physical care of each. *In Interest*

*of L.F.,* 121 P.3d 267, 270 (Colo.App.2005). The court also considers the manner by which the child came to be under the physical care of the nonparent, and the nonparent must show that the parent voluntarily permitted the nonparent to assume the responsibility of physically caring for the child. *See In Interest of C.R.C.,* 148 P.3d 458, 462–63 (Colo.App.2006).

We reject Smith's contention that Silvernail lacks standing because Lauzon did not expressly consent to Silvernail's caring for E.S. We conclude that *C.R.C.* is distinguishable. There, the concluded that the nonparent did not have standing when the mother was trying to get the child returned to her and the nonparent sought parental responsibilities. *See id.* at 464. Here, in contrast, Lauzon did not attend the January 30, 2009 hearing on temporary allocation of parental responsibilities because her bus broke down on her way to the hearing, and although she participated by telephone in a subsequent hearing, the trial court found that Lauzon "did not file any pleadings or formally request that custody be returned to her." The trial court also concluded that, unlike the mother in *C.R.C.,* Lauzon acquiesced in Silvernail's having physical custody and "voluntarily permitted Ms. Silvernail to assume her parental responsibility to provide physical care to the child."

Here, it is undisputed that E.S. lived entirely with Silvernail, and not with either parent, when Silvernail sought parental responsibilities for her. It is also undisputed that Smith requested that Silvernail take E.S. into her home and assume physical care of E.S. for the period of the temporary guardianship. Although the record indicates that Lauzon did not expressly consent to Silvernail's care, Lauzon is not a party to the appeal, and thus Smith may not assert her lack of express consent as a defense to Silvernail's standing. *Cf. In re Parental Responsibilities of A.D.,* 240 P.3d 488, 490 (Colo.App.2010) (holding that the mother lacked standing to assert the biological father's claim that he did not receive adequate notice of the parental responsibilities proceedings involving the child's presumptive

father).[1] Accordingly, we conclude that Silvernail has standing under section 14–10–123(1)(b).

We are not persuaded otherwise by Smith's contention that Silvernail was merely a babysitter who cared for E.S. subject to the direction of her parents. *See, e.g., L.F.,* 121 P.3d at 273 ("[T]he General Assembly did not intend that the term 'physical care' grant temporary caregivers standing to seek allocation of parental responsibilities when their care is subject to the continuing direction and discretion of the child's parents.").

Here, Smith not only voluntarily turned over physical care of E.S. to Silvernail, but he also made Silvernail the child's temporary guardian, with no limitations on her authority, except that Silvernail was to have joint decision-making authority with the parents. *See* § 15–14–204(4), C.R.S.2010 ("Except as otherwise ordered by the court, the temporary guardian has the authority of an unlimited guardian . . . ."); *see also In re D.I.S.,* 249 P.3d 775, 783 (Colo.2011) ("During the existence of the guardianship, the guardian has the responsibilities, duties, and powers of a parent. . . ."). Silvernail testified that E.S. had lived with her on and off for years and was a part of her family. Lauzon described Silvernail as "always involved, as in another parent." E.S.'s therapist testified that E.S. identified her primary family as Silvernail and E.S.'s siblings and that she would be harmed if she were removed from their home. Accordingly, we conclude that Silvernail was more than a mere babysitter and that she had the requisite physical care of E.S. to have standing under section 14–10–123(1)(b).

Because Silvernail had full physical care of E.S. as the child's guardian, we are also not persuaded otherwise by Smith's contention that Silvernail does not have standing because he also exercised some parental responsibilities, including joint decision-making authority and some parenting time, while E.S. lived with Silvernail. *See In re Custody of A.D.C.,* 969 P.2d 708, 710 (Colo.App.1998)

(the fact that a parent maintains contact with a child, including occasional overnights, does not necessarily defeat the standing of a nonparent, with whom the child lives, under section 14–10–123(1)(b)); *In re V.R.P.F.,* 939 P.2d 512, 514 (Colo.App.1997) (same).

### III. Allocation of Parental Responsibilities

■ Smith further contends that the trial court erred by allocating primary parental responsibilities to Silvernail, over his objections, without recognizing his constitutional preference as the child's parent and without finding by clear and convincing evidence that doing so was in the child's best interests. We agree and remand for further findings accordingly.

■ "Although the allocation of parental responsibilities is generally within the sound discretion of the trial court, an appellate court reviews the legal standard applied by the court de novo." *In re Parental Responsibilities of Reese,* 227 P.3d 900, 902 (Colo. App.2010).

■ Parents have a fundamental liberty interest in the care, custody, and control of their children. *Troxel v. Granville,* 530 U.S. 57, 65–66, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). Thus, when a nonparent seeks parental responsibilities for a child contrary to the wishes of a parent, the parent's determination as to the child's best interests must be given special weight. *Id.* at 70, 120 S.Ct. 2054; *In re Parental Responsibilities of B.J.,* 242 P.3d 1128, 1134 (Colo.2010). For a court to interfere with a parent's fundamental right to make decisions concerning his or her child, the court's order must also be founded on special factors justifying such interference. *See Troxel,* 530 U.S. at 68, 120 S.Ct. 2054; *B.J.,* 242 P.3d at 1134. As between a parent and nonparent, the parent is also entitled to a presumption that he or she has a first and prior right to the primary care of his or her child. *See B.J.,* 242 P.3d at 1133. This presumption may be rebutted only by

---

1. The supreme court recently granted a petition for certiorari to address whether sections 14–10–123(1)(b) and (c) require, "as a prerequisite to a non-parent's standing to commence a proceeding for an allocation of parental responsibilities, the consent of both natural parents to the non-parent's sole physical care of the child." *In Interest of B.B.O.,* No. 09CA1874, 2010 WL 3260044 (Colo.App. Aug. 19, 2010) (not published pursuant to C.A.R. 35(f))(*cert. granted* Apr. 18, 2011).

clear and convincing evidence, and the trial court must further identify special factors justifying allocating primary care to the nonparent. *Id.* at 1134–35.

■ A parent does not relinquish parental rights by voluntarily placing a child under the care of a third party, and *Troxel* protections still apply in that situation. *See D.I.S.,* 249 P.3d at 785 ("We do not view the *Troxel* presumption as limited only to parents who uninterruptedly maintain custody of their child . . . .").

■ In order to comply with the *Troxel* special weight and special factors requirements, a court may allocate primary care of a child to a nonparent over a parent's objection only on clear and convincing evidence supporting that allocation, and the court must also make findings of fact laying out the special factors on which it relied to justify its interference with the parent's fundamental rights. *See B.J.,* 242 P.3d at 1135; *Reese,* 227 P.3d at 902–03.

■ We do not interpret the Colorado Supreme Court's recent decision in *D.I.S.* as requiring that the preponderance standard should apply here. In *D.I.S.,* the court held that in proceedings brought by parents to terminate a permanent nonparent guardianship, the guardian need only establish by a preponderance of the evidence that it is in the best interests of the child to continue the guardianship. *See D.I.S.,* 249 P.3d at 777. Here, in contrast, Silvernail had only temporary guardianship of E.S., and the dispute arose on the parties' requests for allocation of parental responsibilities and not on a motion to terminate the guardianship. Using the lower burden of proof is logical when a natural parent has already agreed to transfer significant legal authority to another person pursuant to a permanent guardianship. When, as here, however, a parent has transferred authority for a brief period pursuant to a temporary guardianship, the higher burden of proof by clear and convincing evidence should apply. Thus, we conclude *B.J.,* rather than *D.I.S.,* establishes the applicable standard of proof here.

Although the trial court cited *Troxel* in its order, the court did not have the benefit of the recent decisions in *Reese* and *B.J.* at the time it entered the order, and thus we cannot assume it applied the clear and convincing evidence standard of proof or found special factors to justify its allocation of parental responsibilities. Accordingly, we vacate that part of the order and remand for further findings. *See, e.g., Reese,* 227 P.3d at 905–06.

We are not persuaded otherwise by Silvernail's contention that the trial court found Smith "unfit," and therefore he was not entitled to *Troxel* protections. Although the trial court noted Smith's deficiencies, as compared to Silvernail, as a primary caregiver for E.S., we do not interpret the court's order as finding Smith an unfit parent. *See* § 19-3-604(2), C.R.S.2010 (for parental rights termination purposes, describing parental unfitness as occurring when the "relationship between parent and child is likely to result in grave risk of death or serious bodily injury to the child" or the parent is "unable or unwilling to give the child reasonable parental care," including "nurturing and safe parenting . . . adequate to meet the child's physical, emotional, and mental health needs").

The portion of the order finding that Silvernail has standing to request parental responsibilities for E.S. is affirmed. The portion of the order allocating parental responsibilities for E.S. is vacated, and the case is remanded for further findings, as provided herein. Current orders shall remain in effect pending any further proceedings on remand.

Judge CARPARELLI and Judge GABRIEL concur.