23CA1749 Marriage of Shepard 08-01-2024 COLORADO COURT OF APPEALS Court of Appeals No. 23CA1749 Adams County District Court No. 09DR1707 Honorable Rayna Gokli McIntyre, Judge In re the Marriage of Cole Shepard, Appellant, and Page K. Shepard, Appellee. ORDER AFFIRMED IN PART AND VACATED IN PART, AND CASE REMANDED WITH DIRECTIONS Division VII Opinion by JUDGE TOW Gomez and Kuhn, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced August 1, 2024 The Hoben Law Firm, Kristine R. Hoben, Castle Rock, Colorado, for Appellant No Appearance for Appellee 
1 ¶ 1 In this post-dissolution of marriage proceeding, Cole Shepard (father) appeals the district court’s order modifying parenting time such that Page K. Shepard (mother) became the primary residential parent instead of father for their child, A.C.S. (the child). We vacate the order to the extent it substantially modified the parenting time orders and changed the child’s primary residential parent. We affirm the order to the extent it denied father’s request for attorney fees. (Because neither party challenged the other two components of the order — the denial of mother’s request for make-up parenting time with the child’s sibling and the appointment of a legal representative for the child — we take no action as to those components of the order.) I. Background ¶ 2 The marriage between father and mother was dissolved in August 2010. There were three children of the marriage: the child; his younger sibling, T.C.S.; and his older sibling, N.C.S. Several months after the entry of the decree of dissolution and permanent orders, the court granted mother’s request to relocate with the children to West Virginia. 
2 ¶ 3 In early 2022, after a series of modifications to the allocation of parental responsibilities, the existing order provided that the children lived primarily with mother in West Virginia, while father had regular parenting time for at least five days per month, sometimes in West Virginia and sometimes in Colorado. The parties shared joint decision-making authority. ¶ 4 In January 2022, after mother unilaterally decided not to allow the children to fly to Colorado for father’s scheduled parenting time (citing an impending severe snowstorm), father filed a motion concerning parenting time disputes pursuant to section 14-10-129.5, C.R.S. 2023. Father alleged that mother was engaging in alienation and poisoning the relationship between him and the children. Father requested both make-up parenting time and a modification of the parenting time order such that the child and his younger sibling be relocated to live with him.
1 On March 7, 2022, after a hearing, the district court found that mother had violated the parenting time order and awarded father make-up 1 Because the oldest child was months away from graduating high school, father acknowledged that relocating would likely not be in that child’s best interests. 
3 parenting time. The court also found that mother was interfering with father’s relationship with the children and emotionally harming the children in the process. The court set over the request for modification of parenting time and ordered an updated report from the Child and Family Investigator (CFI) who had previously been involved in the case.
2 ¶ 5 The very next day, father moved to restrict mother’s parenting time. He alleged that mother had responded to the court’s March 7 order by emailing father’s counsel to relinquish her parental rights to all three children — and included completed relinquishment paperwork. Father contended that mother’s behavior endangered the children. ¶ 6 At the hearing on father’s emergency motion, the evidence showed that mother had also texted the children telling them that their father was coming to West Virginia to get them, after which she would have no contact with them. The court observed that the 2 The court apparently never reduced its March 7 order to writing. The observations regarding mother’s actions and their resulting harm to the children are not reflected in the minute order. However, the updated CFI report describes the court’s observations, taken from a transcript of the hearing — a transcript not made a part of our appellate record. 
4 message did not inform the children that the lack of contact was at her request, thus likely leaving the children under the impression that these developments were instigated by father. The court granted the motion to restrict, temporarily moving the child and his younger sibling to Colorado and, again temporarily, allocating sole decision-making to father. ¶ 7 The emergent situation having been addressed, the motion proceeded on father’s request to be permanently allocated sole decision-making and for the two younger children to live primarily with him, while mother sought to lift the restriction requiring her parenting time be supervised. ¶ 8 After a hearing in January 2023, the district court granted father’s motion for a substantial modification of parenting time, and father’s home in Colorado became the primary residence of the child and his younger sibling.
3 Mother’s parenting time was no longer required to be supervised and included “the majority of the [c]hildren’s summer vacation.” The parties maintained joint decision-making responsibility. 3 By this time, the oldest child had turned eighteen and, thus, was no longer subject to an order allocating parental responsibilities. 
5 ¶ 9 After spending the summer of 2023 in West Virginia, the child refused to return to Colorado. Mother requested a status conference, which was granted. The court ordered father to travel to West Virginia and attempt to retrieve the child. However, despite the involvement of the local police department in attempting to convince the child to return home with father, the child refused to return to Colorado. Days later, mother moved to enroll the child in school in West Virginia and requested that she become the primary residential parent for the child. Father objected, asserting that mother was not even permitted to file her motion because less than two years had passed since the parenting time was amended making him the child’s primary residential parent. See § 14-10-
129(1.5), C.R.S. 2023 (providing that no motion to modify parenting time may be filed for two years after the resolution of a motion that sought to substantially modify parenting time and change the party with whom the child resides a majority of the time). ¶ 10 The court held another status conference on mother’s motion to enroll the child in school and to modify the parenting time order. At the conclusion of that conference, over which a senior judge presided because the assigned judge was ill, the court scheduled a 
6 hearing but noted that “the issue of school enrollment and parenting time will only be considered if the court finds, on the basis of affidavits to be filed by the parties, that the endangerment standard has been met.” (Though the senior judge did not cite the statute, this language parallels the language of the statutory exception to the two-year bar. See id.) ¶ 11 Mother filed an affidavit and father responded. Father’s affidavit, though not styled as either a motion or a response, also objected to mother’s request — asserted at the status conference — for make-up parenting time with the child’s sibling,
4 sought to reinstate the restrictions on mother’s parenting time, and sought attorney fees against mother. ¶ 12 At the scheduled hearing, the regularly assigned judge heard evidence on all the outstanding issues. After mother presented her case on her requested modification of the parenting time order, father moved for a “directed verdict” on mother’s request to become the youth’s primary residential parent, arguing that mother had not 4 Contrary to the parenting time order, the child’s sibling did not go to West Virginia for the summer. However, though the parties appear to dispute the reason for this, it is not an issue in this appeal. 
7 met the endangerment standard required to modify the January 2023 order. The court granted father’s motion for “directed verdict” on the issue of endangerment and took the other issues under advisement.
5 The next day, the court conducted an in camera interview with the child. The court subsequently issued a written order granting mother’s request for the child to reside primarily with her and attend school in West Virginia. The court’s order did not address decision-making responsibilities. ¶ 13 Father moved for post-trial relief pursuant to C.R.C.P. 59 contending, among other things, that the court erred by (1) substantially modifying parenting time, including changing the party with whom the child resides a majority of the time; (2) restricting father’s parenting time without a finding of endangerment; and (3) allegedly giving mother sole educational 5 Though both father’s counsel and the court treated the request as a motion for directed verdict under C.R.C.P. 50, that rule only applies in jury trials. In a hearing where the judge serves as the fact finder, such a motion is brought under C.R.C.P. 41(b)(1). Franklin Drilling & Blasting Inc. v. Lawrence Constr. Co., 2018 COA 59, ¶ 13. Though our appellate review is arguably slightly different between the two motions, see id. at ¶ 14, any analytical differences are of no consequence here. 
8 decision-making responsibility without a finding of endangerment. The court denied the motion. II. Modification of Parenting Time ¶ 14 Father contends that the district court erred when it modified the January 2023 parenting time order. We agree, and therefore vacate the court’s parenting time determination. A. Legal Framework and Standard of Review ¶ 15 The district court has broad discretion in deciding whether to modify parenting time, and we must exercise every presumption in favor of upholding the court’s decision. See In re Parental Responsibilities Concerning S.Z.S., 2022 COA 105, ¶ 13. The court abuses its discretion when its decision is manifestly arbitrary, unfair, or unreasonable, or is based on a misapplication of the law. In re Marriage of Bochner, 2023 COA 63, ¶ 12. We review de novo whether the court applied the appropriate legal standard. See In re Parental Responsibilities of Reese, 227 P.3d 900, 902 (Colo. App. 2010). ¶ 16 A court may generally modify an order granting or denying parenting time rights “whenever such order or modification would serve the best interests of the child.” § 14-10-129(1)(a)(I). There are 
9 exceptions to this broad grant of authority, however. For example, when the court has previously resolved a request to substantially modify parenting time and change the primary residential parent, the statute prohibits a party from filing a similar motion for two years unless the court finds, “on the basis of affidavits, that the child’s present environment may endanger the child’s physical health or significantly impair the child’s emotional development.” § 14-10-129(1.5). B. Absent a Showing of Endangerment, the Motion Was Improperly Filed ¶ 17 The court’s order in January 2023 granted father’s request to substantially change parenting time as well as switch the role of primary residential parent from mother to father. Mother filed her motion, essentially asking to reverse that decision as to the child, mere months later. Given this timing, the restrictions of section 14-10-129(1.5) applied. Accordingly, once the court ruled that mother had not shown the child’s environment endangered him physically or impaired his emotional development, it was required to strike the portion of the motion seeking such a modification. See id. (Because the statute says that no motion may 
10 be filed unless the endangerment exception can be met, the proper remedy once no endangerment is found is to strike, rather than deny, the motion.)
6 ¶ 18 Because the statute prohibited filing the motion under these circumstances, it should not have been granted. We must, therefore, vacate the order insofar as it modified the then-existing parenting time order to switch the parent with whom the child lived a majority of the time.
7 In light of our disposition, we need not address father’s remaining contentions of error to the extent they 6 Logistically, in order to comply with the statutory ban on filing the motion, a parent who seeks to modify parenting time within the two years after a substantial change should file a motion for leave to file the motion to modify (attaching the proposed motion to modify), along with the affidavit required by section 14-10-132, C.R.S. 2023, for all post-decree motions for modification of the allocation of parental responsibilities. If the court finds, on the basis of that affidavit, that there is physical endangerment or significant impairment of the child’s emotional development, it will grant leave to file the accompanying motion to modify. If not, the court will deny leave and the accompanying request for modification will not be filed. 7 We recognize that by the time the mandate issues in this case restoring jurisdiction to the district court, the child will be eighteen years old (or very close to it); once he turns eighteen, he will no longer be subject to any order allocating parental responsibilities. See In re Marriage of Tibbetts, 2018 COA 117, ¶ 21. Nevertheless, because the child has not yet turned eighteen, the issue is not moot. 
11 involve the order’s impact on parenting time or decision-making authority. III. Attorney Fees ¶ 19 Father also asserts that the district court erred when it denied his request for attorney fees. He asserts that “because [m]other’s requests could only be granted upon a finding of endangerment, and a [directed verdict] was granted, it was absolutely appropriate for the [c]ourt to [order] [m]other to pay [f]ather’s attorney fees.” We discern no error. ¶ 20 Under section 13-17-102(4), C.R.S. 2023, a court “shall assess attorney fees if . . . it finds that an attorney or party brought . . . an action, or any part thereof, that lacked substantial justification,” meaning that the action was substantially frivolous, groundless, or vexatious. The district court has broad discretion to determine whether an action lacks substantial justification. Patterson v. James, 2018 COA 173, ¶ 46. Thus, we review the district court’s resolution of a request for fees under section 13-17-102 for an abuse of discretion, meaning that we will not reverse the ruling unless it is based on a misapplication of the law or is manifestly arbitrary, unreasonable, or unfair; we do not consider whether we 
12 would have reached a different result. In re Estate of Shimizu, 2016 COA 163, ¶¶ 15, 30. ¶ 21 We realize that the court’s exercise of its discretion in concluding that mother’s motion did not lack substantial justification may have been impacted by its erroneous application of section 14-10-129(1.5). Nevertheless, the record shows that mother litigated the existence of the child’s endangerment — and that there was some evidence to support her contention in this regard. Father does not explain how the court’s determination that the child was not endangered made mother’s initial motion to modify frivolous or vexatious. Mere lack of success does not amount to a lack of substantial justification. See Gravina Siding & Windows Co. v. Gravina, 2022 COA 50, ¶ 89. IV. Disposition ¶ 22 The portion of the order denying father’s request for attorney fees is affirmed. The portion of the order modifying the allocation of parental responsibilities related to the child and making mother the child’s primary residential parent is vacated. The matter is remanded with instructions to strike the motion to modify. JUDGE GOMEZ and JUDGE KUHN concur.