23CA1977 Parental Resp Conc KMRT 10-10-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA1977
Adams County District Court No. 21DR30244
Honorable Kelley R. Southerland, Judge

In re the Parental Responsibilities Concerning K.M.R.T., a Child,

and Concerning Christine Thieman,

Appellant,

and

Tegan Roland,

Appellee.

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE SCHUTZ
Tow and Pawar, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 10, 2024

Christine Thieman, Pro Se

Melusky Law, LLC, David J. Melusky, Greeley, Colorado, for Appellee

¶ 1     This appeal arises from the district court's permanent order allocating parental responsibilities for K.M.R.T. to Tegan Roland (father). Christine Thieman (grandmother) appeals the district court's judgment. We affirm.

## I.     Background

¶ 2     K.M.R.T. and his twin were born in 2019. K.M.R.T.'s twin died tragically two months later. The baby's death greatly impacted the family. Both parents struggled in its wake and were unable to provide proper care for K.M.R.T. Father became addicted to methamphetamine, had several criminal charges filed against him, and struggled on probation. Mother moved to Texas and had minimal contact with K.M.R.T. Grandmother filled the void left by K.M.R.T.'s parents and provided a safe and stable environment for K.M.R.T. during his first few years of life.

¶ 3     In April 2021, grandmother filed a petition for allocation of parental responsibilities and, in October 2021, was granted exclusive custody of K.M.R.T. through a temporary order. As father got his life back on track, the court granted him supervised parenting time with K.M.R.T. After six months, that changed to unsupervised parenting time, with the goal of reunifying K.M.R.T.

1

with him. At the time of the district court's permanent order allocating parental rights, father had successfully completed probation and been sober for over 1,000 days.

¶ 4 As father's parenting time with K.M.R.T. increased, grandmother's behavior became increasingly erratic, and consequently she became less credible to the district court.

¶ 5 Grandmother began making allegations that K.M.R.T. was sexually abused while in father's care. Sometimes she alleged that father was the perpetrator of the abuse, and sometimes she referred vaguely to "something happening" to K.M.R.T. while in father's care. For the next eighteen months, grandmother continued to insist that K.M.R.T. had been the victim of sexual abuse. During that time several professionals, including a caseworker, multiple doctors, therapists, a court family investigator (CFI), and a child legal representative (CLR), evaluated K.M.R.T. None concluded that K.M.R.T. had been abused.

¶ 6 In July 2023, the district court found that grandmother's actions, which included repeatedly photographing K.M.R.T.'s genitals and buttocks, and subjecting him to repeated interviews and therapies, endangered K.M.R.T.'s emotional health. The

district court removed K.M.R.T. from grandmother's care and placed him with father.

¶ 7    K.M.R.T. remained with father through the permanent orders hearing, which was held in October 2023.  After an evidentiary hearing, the district court awarded father full parental responsibility for K.M.R.T., with parenting time for mother at father's discretion.  The court granted grandmother supervised visits with K.M.R.T. in the form of phone and video calls up to twice a week but denied her request for custody or in-person visitation with K.M.R.T.  The court also denied her request for joint decision-making.

## II.    Analysis

¶ 8    Grandmother raises several issues on appeal.

¶ 9    First, she argues that the district court applied the incorrect burden of proof during the permanent orders hearing.

¶ 10    Second, she argues that the district court "delegated its authority as a trier of fact" to the CFI and CLR.  As we understand her argument, grandmother asserts that the district court improperly considered the CFI's report and the CLR's

recommendations when allocating father sole custody and decision-making for K.M.R.T.

¶ 11     Finally, grandmother argues that the permanent order should be vacated because it "punished" her for "two perceived misdeeds."

### A.     Standards of Review and Applicable Law

¶ 12     We review the district court's application of the correct legal standard de novo. *Tallman v. Aune*, 2019 COA 12, ¶ 21. We review the district court's factual findings for clear error. *Lo Viento Blanco, LLC v. Woodbridge Condo. Ass'n*, 2021 CO 56, ¶ 17. We also review a district court's order allocating custody and decision-making for an abuse of discretion. *In re Marriage of Lampton*, 704 P.2d 847, 849 (Colo. 1985).

### 1.     Nonparent Seeking Parental Responsibilities

¶ 13     A nonparent may file a petition for allocation of parental responsibilities when a child is not in the physical custody of a parent, or the petitioner has had physical care of the child for six months or longer, and the petition is filed within six months of the nonparent's care ending. § 14-10-123(1)(b)-(c), C.R.S. 2024. Grandmother timely filed her petition.

4

¶ 14    In *Troxel v. Granville*, 530 U.S. 57, 68 (2000), the United States Supreme Court held that a fit parent is presumed to act in the best interests of their children.  Therefore, a fit parent's decisions concerning the child are accorded "special weight."  *Id.* at 70.  But this special weight may be rebutted by a nonparent through clear and convincing evidence that the parent is unfit or the parent's decision is not in the best interests of the child.  *In re Parental Responsibilities of Reese*, 227 P.3d 900, 905 (Colo. App. 2010).  Therefore, when allocating parental responsibilities between a parent and a nonparent, the trial court must (1) accord special weight to the parent's determination of the child's best interests; (2) consider all relevant factors concerning the child's best interests, including section 14-10-124(1.5)(a) and (b), C.R.S. 2024; and (3) allocate parental responsibilities to the nonparent only if it enters findings *based upon clear and convincing proof* laying out the special factors upon which it relied in determining that the best interests of the child justify such an allocation.  *Reese,* 227 P.3d at 905.

### 2. Professionals in APR Proceedings

¶ 15 In Colorado, CFIs are appointed under section 14-10-116.5, C.R.S. 2024. The statute explains that the CFI "shall make independent and informed recommendations to the court, in the form of a written report, unless otherwise ordered by the court." § 14-10-116.5(2)(b). That report "shall provide options that serve the best interests of the child." *Id.* When the court appoints an expert like a CFI, the CFI's report is automatically accepted into evidence without further foundation, unless a party notes an objection in the trial management certificate. C.R.C.P. 16.2(g)(2)(C). Alternatively, a party may notify the court and opposing party within ten days of receiving a report if he or she intends to object to the admission of the report or the "hearsay nature of the report." *Pacheco v. Pacheco*, 554 P.2d 720, 722-23 (Colo. App. 1976). If there is no objection made within those ten days, "any such objections are waived." *Id.* at 723.

¶ 16 A court may also "appoint an attorney, in good standing and licensed to practice law in the state of Colorado, to serve as [a CLR], representing the best interests of the child in any domestic relations proceeding that involves the allocation of parental responsibilities."

§ 14-10-116(1), C.R.S. 2024. A CLR makes recommendations to the district court based on the best interests of the child as defined by section 14-10-124. § 14-10-116(2)(a).

## B. The District Court's Findings

¶ 17 Father's parental rights were never terminated. Father was sober at the time of the final orders hearing, and the district court determined, with record support, that father was a fit parent entitled to the *Troxel* presumption. Thus, the district court required grandmother to prove by "clear and convincing evidence" that allocating father parental responsibilities for K.M.R.T. was not in the child's best interest.

¶ 18 Grandmother argues that the district court applied the wrong burden of proof, asserting that father's decisions concerning K.M.R.T. were only entitled to "special weight." But grandmother's argument fails to recognize *Troxel*'s express holding that a nonparent must overcome a fit parent's decisions concerning the child's best interest with clear and convincing evidence. Thus, we reject grandmother's suggestion that the district court erred by requiring her to prove by "clear and convincing evidence" that

father's parenting time decisions were not in K.M.R.T.'s best interest.

¶ 19     Grandmother was unable to meet the clear and convincing burden, in part, because of her own behavior. Grandmother persisted in her unsupported allegations that K.M.R.T. was abused during father's care. The district court found, with record support, that grandmother refused to accept the results of multiple investigations into her allegations and that her behavior was increasingly erratic regarding the child's parenting time with father. The district court also noted that grandmother continued to subject K.M.R.T. to tests and interviews, and that by July 2023 these unnecessary demands endangered K.M.R.T.'s emotional health.

¶ 20     In contrast, the court found that father remained sober and provided K.M.R.T. with a happy and stable home. The court noted that K.M.R.T. adjusted quickly to living with his father full time and was generally happy living with father. The pair formed significant bonds in a short period of time. Father made good decisions regarding K.M.R.T.'s care and used proper community and family support to care for K.M.R.T. The court also noted that mother supported the award of custody and decision-making to father and

that father continued to encourage a relationship between K.M.R.T. and mother.

¶ 21 Based on these findings, the district court did not err by denying grandmother's request for an allocation of parental responsibilities and awarding father sole custody and decision-making for K.M.R.T.

### C. Court Did Not Delegate its Decision-Making Authority

¶ 22 As previously noted, the district court may admit a court-appointed expert's report into evidence without further foundation unless a party timely objects. C.R.C.P. 16.2(g)(2)(C); *Pacheco*, 554 P.2d at 722-23.

¶ 23 Here, the CFI was appointed by the court. Grandmother did not file a trial management certificate. Father did not note an objection to the admission of the CFI's report in the trial management certificate he filed. Additionally, neither party notified the court or the opposing party that they objected to the CFI's report. Without objection from either party, the report was properly received into evidence. Therefore, we find no error in the district court's consideration of the substance of the CFI's report.

¶ 24    Grandmother argues that the court could not consider the hearsay within the report. Grandmother is correct that hearsay statements generally cannot be admitted as evidence unless the statement falls within an exception recognized by the rules of evidence or another statute that makes the statement admissible. CRE 802. However, grandmother is incorrect that the court could not consider the hearsay within the CFI's report. The report was admitted into evidence without objection from the parties. Once the report was admitted, the court could consider the entire report, including the hearsay within it, and give the contents of the report the weight it deemed appropriate.

¶ 25    CLRs are appointed under section 14-10-116(1) and represent the best interests of the child. Here, the court appointed a CLR to represent K.M.R.T.'s best interests and considered her recommendations. Because the court is permitted to consider the CLR's recommendation, we find no error in it doing so.

¶ 26    And contrary to grandmother's argument, the district court did not simply defer to the CFI and CLR. Rather, the district court made extensive written findings of fact. The district court found that father was sober, that he was providing a safe and happy

environment for K.M.R.T., and that K.M.R.T. was happy and well-adjusted while living with father. These findings, among others, reflect that the district court did not simply defer to either the CFI's report or the CLR's recommendation. Instead, the findings reflected the district court's care and critical engagement with the presented evidence as it made decisions in K.M.R.T.'s best interest.

### D. No Punishment of Grandmother

¶ 27 Finally, we reject the contention that removing K.M.R.T. from grandmother's care and awarding father parental responsibilities was a means for the court to punish grandmother for missing a court date and insisting that K.M.R.T. was sexually abused. Grandmother argues her insistence that K.M.R.T. suffered abuse is the natural worry of a grandparent who is fearful about symptoms she claims he exhibits. Grandmother is correct that a court cannot give or take away parental responsibilities to punish a party. Rather, the focus is always on the best interests of the child. § 14-10-124(1.5). But grandmother provides no persuasive argument that the district court's permanent order was intended to punish her, rather than serve the best interests of K.M.R.T.

¶ 28　　The district court found that father was a fit parent, and grandmother failed to meet her burden of proof to show otherwise by clear and convincing evidence.  The court awarded father sole parental responsibilities for K.M.R.T. because it found that it was in K.M.R.T.'s best interest to be with father.

¶ 29　　Grandmother cared for K.M.R.T. during his earliest years when both mother and father were unable to care for him.  She clearly developed a strong bond with the child.  However, the court decided to move K.M.R.T. into father's care because it was in the best interest of K.M.R.T. to do so, not as a punishment for grandmother devised by the court.

### III.　Disposition

¶ 30　　The district court's judgment denying grandmother's motion for parenting time and decision-making, and instead allocating parental responsibilities to father, is affirmed.

JUDGE TOW and JUDGE PAWAR concur.